# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 16-00097-01-CR-W-DGK |
| Christopher L. Corn, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE (Doc. #20) filed on June 13, 2016 by defendant Christopher L. Corn ("Corn"). On February 9, 2017, the undersigned held an evidentiary hearing on Corn's motion to suppress. Corn was present and represented by his counsel, Mark Thomason. The government was represented by Assistant United States Attorney Jeff McCarther. At the evidentiary hearing, testimony was given by Officers Justin Palmer and Robert Martin, both with the Kansas City Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't #1 | Dash cam video |
| Def't #101 | Incident Report |
| Def't #102 | Incident Report |
| Def't #103 | Dash cam video |

On the basis of all the evidence adduced at the evidentiary hearing and the legal arguments advanced, the undersigned submits the following:

# PROPOSED FINDINGS OF FACT

1. On March 11, 2016, Justin Palmer was a police officer with the Kansas City Missouri Police Department patrolling in an undercover vehicle in the area of 84th Street and Paseo in Kansas City, Missouri. Tr. at 4-5, 21.

2. On March 11, 2016, Robert Martin was also a police officer with the Kansas City Missouri Police Department who was likewise patrolling (in a marked police vehicle) in the area of 84th Street and Paseo in Kansas City, Missouri. Tr. at 36-37.

3. At around noon on that date, Officer Palmer and his partner (Officer Bobbie King) observed a black Ford pickup truck being operated by an individual known to the officers to be a narcotics offender and dealer in stolen property. Tr. at 6, 24.

4. Based on the individual's prior criminal history and the fact that he had an outstanding traffic warrant, the officers decided to conduct surveillance on the individual. Tr. at 6-7, 22-23.

5. Eventually, the officers observed the truck pull into the parking lot for a McDonald's near 84th Street and Wornall. Tr. at 7, 26-27.

6. The truck parked next to a white Ford Mustang. Tr. at 8, 27.

7. Officer Palmer recognized the Mustang as a vehicle he had previously observed at another known narcotics location. Tr. at 8.

8. The officers then observed the two occupants of the Ford truck exit the vehicle and go into the McDonald's. Tr. at 8, 27.

9. Three to four minutes later, the officers observed five people simultaneously exit the McDonald's (including the occupants of the Ford truck) with two people getting in the Ford truck and three people getting into the Mustang. Tr. at 8-9.

10. None of the people exiting the McDonald's appeared to have any food. Tr. at 9.

11. Based on his experience, Officer Palmer believed a drug transaction had occurred. Tr. at 9.

12. As the two vehicles were pulling out of the McDonald's parking lot, Officer Palmer radioed Officer Martin (who was known to Officer Palmer to be in the area) and told him that if he saw the white Mustang, it "would be good to conduct a traffic stop if possible." Tr. at 9-10, 27-28, 30, 38.

13. Officer Palmer continued surveillance of the Ford truck. Tr. at 10, 28-29.

14. Officer Martin meanwhile began following the Mustang. Tr. at 39-40.

15. After following the Mustang briefly, Officer Martin observed the Mustang make a right turn into a driveway without signaling. Tr. at 41, 61-62.

16. After the Mustang pulled into the driveway, Officer Martin parked his patrol car and approached the Mustang. Tr. at 41-42.

17. As Officer Martin approached the vehicle, the driver (later identified as Corn) was attempting to exit the Mustang. Tr. at 42-43.

18. Officer Martin asked Corn to remain in the vehicle and he asked for Corn for identification. Tr. at 42-44.

19. Corn told Officer Martin that he did not have a driver's license and gave Officer Martin a false name and initially indicated that his date of birth was 1923 (which would have meant that he was over 90 years old). Tr. at 44.

20. Officer Martin then returned to his patrol car to request a second police vehicle to come to the scene. Tr. at 45.

21. While Officer Martin was talking on the radio, Corn opened the driver's side of the Mustang door, exited the vehicle, and began fleeing the scene on foot. Tr. at 45, 65.

22. Officer Martin pursued Corn. Tr. at 45.

23. Officer Palmer overheard on the police radio that Officer Martin was engaged in a foot chase and proceeded to break off his surveillance of the Ford truck and headed to the location of the chase. Tr. at 10-11, 30-31, 46, 65.

24. Upon his arrival in the area, Officer Palmer observed Corn running between houses and he also began a foot pursuit of Corn. Tr. at 11, 33.

25. While in pursuit, Officer Palmer observed Corn "digging in his waistband in an attempt to pull something from his pants." Tr. at 11, 32-33.

26. While still in pursuit, Officer Palmer observed Corn pull out of his waistband "a green Crown Royal bag with brown strings attached to it." Tr. at 12, 33-34, 46.

27. Corn threw the bag away toward some nearby trolley tracks. Tr. at 12, 33-34.

28. Within seconds after throwing the bag away, Corn was taken into custody. Tr. at 12-13.

29. Officer Palmer recognized Corn from a prior encounter involving a stolen automobile. Tr. at 13-14, 34.

3

30. After Corn was arrested, Officer Palmer located the bag thrown by Corn during the foot chase. Tr. at 14, 34.

31. The bag was found about 7 to 15 feet from the point of arrest. Tr. at 14, 46.

32. The bag contained a Rosco .22 caliber revolver. Tr. at 14-15, 46.

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, Corn argues that the stop of his vehicle violated the Fourth Amendment and, as a consequence, all the fruits following from that allegedly illegal stop must be suppressed. The Court disagrees that the stop of the Mustang was unconstitutional.

As protection for citizens from unwarranted government intrusion, the Fourth Amendment generally requires officers to obtain a court-sanctioned search warrant based on probable cause before searching private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000). Specifically, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the express language of the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960).

As previously noted, in many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, Officer Martin did not have a warrant to stop, arrest or search defendant Corn. In that regard, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

4

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).  In the present case, the government seeks to justify the warrantless seizure of Corn (and the bag he attempted to discard) as justified growing out of a proper traffic stop.

Undoubtedly, "[a] traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008).  However, it is well settled that "[a]n officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." *Id*.  Similarly, "it is well established that a traffic violation – however minor – creates probable cause to stop . . . a vehicle." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007).   Indeed, such probable cause is not defeated even if there is an inference that an officer conducts a traffic stop for an ulterior motive.  *See*, *e.g.*, *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008).  In this case, without any serious question, Officer Martin had probable cause to initiate a traffic stop of the Mustang based on his observation of Corn making a right turn into a driveway without signaling.[1]  Further, "the act of fleeing the initial stop constitute[s] grounds for a defendant's arrest which was attenuated from the earlier stop." *United States v. Cox*, 2014 WL 2719645, op. at *4 (D. Minn. June 16, 2014).

---

[1] *See*, *e.g.*, MO. REV. STAT. § 304.019 ("No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal").  The Kansas City ordinance is even more specific:

> No person shall . . . turn a vehicle to enter a private road or driveway . . . unless and until such movement can be made with reasonable safety.  No person shall so turn any vehicle without giving an appropriate signal in the manner provided in this division.

KANSAS CITY, MISSOURI, CODE OF GENERAL ORDINANCES §70-454(a).

5

Case 4:16-cr-00097-DGK   Document 45   Filed 03/20/17   Page 5 of 7

With regard to the seizure by the police of the bag containing the firearm that Corn was seen discarding, the law is well settled that "[w]hen a person voluntarily abandons his interest in property . . . he relinquishes any expectation of privacy and may not challenge a search of that property based on the Fourth Amendment." *United States v. Camberos-Villapuda*, 832 F.3d 948, 951-52 (8th Cir. 2016). Whether a defendant voluntarily abandoned his interests in a particular property is determined based on the totality of the circumstances. *United States v. Caballero-Chavez*, 260 F.3d 863, 866–67 (8th Cir. 2001). However, courts particularly consider whether the defendant denies ownership of the property and whether he physically relinquished the property. *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). Additionally, abandonment is determined based on the objective facts available to the investigating officers at the time they conducted the challenged search – it does not depend on a defendant's knowledge or intent. *United States v. Nowak*, No. 825 F.3d 946, 948–49 (8th Cir. 2016) (*per curiam*).

Under this law and the facts of this case, the Court concludes that Corn abandoned the bag (and the gun contained therein) such that he may not now challenge the search and seizure of the bag as violating his Fourth Amendment rights. This ruling means the evidence will not be suppressed. It, of course, does not mean that the government is excused from proving to a factfinder at trial that Corn had possession of the bag and discarded it while fleeing.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the motion to suppress filed by Christopher L. Corn [Doc. 22].

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and

serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                              */s/ John T. Maughmer*
                                                       **John T. Maughmer**
                                      **United States Magistrate Judge**